Good morning, Honors. Good morning. That's part of it. May it please the Court, my name is Joshua Bardavid, co-counsel to Ms. Chen. The agency erred in finding that Ms. Chen failed to demonstrate a well-founded fear of future persecution. The first error of the agency was distinguishing between children born to nationals overseas as opposed to children born in China. Specifically, the board citing to a matter of JWS and JHS noted that children born in China were treated differently than children who were born in the United States. Those cases, JHS and JWS themselves relied on the 2007 profile for that proposition. The 2007 profile itself found that because China treated nationals of Chinese citizens who were born abroad as U.S. citizens as opposed to Chinese nationals, they would not fall within the family planning policy. However, in this instance, in this case, the board specifically presumed that not only would Ms. Chen's children be treated as nationals of China, it presumed that her children would be registered in the household registration. Therefore, the distinguishing factor that was present in JHS and JWS, that is that the distinction was not present here. My sense is that it doesn't matter because the State Department documentation on which the board relied showed that whatever the classification of the youngsters would be, the province to which she was relocating did not engage in persecution. Well, Your Honor, two things to that. First is that if it didn't matter, then why would the board be making that finding? The board had to deem that relevant for a reason, relevant to the determination of whether or not Ms. Chen's children or Ms. Chen would face sterilization or other forms of persecution if returned to China. Had they not felt that that was relevant, they wouldn't have made that finding. Clearly, they're determining that is a relevant factor. Counsel, there's an issue here that neither side particularly addressed, but it is, I guess, a policy question. And that is, here we have births that are occurring in the United States during the pendency of deportation proceedings. And those births are then raised as a reason for why relief should be granted because now I can't return. Did the board address that at all? We have addressed that, I think, in some prior cases, but not involving during the pendency of deportation proceedings. Yes, Your Honor. The board certainly didn't address that in this specific case. I believe it has been addressed in some of the board's precedential cases. And I think the overriding factor with respect to this policy is that the board made a determination that children born in the United States can form the basis of receiving a grant of asylum. The board is certainly aware of this policy, and I think what it comes down to is Congress is aware of this policy. And when Congress first enacted in 1996, as part of IRA-IRA, the changing definition of refugees to allow individuals fearing persecution on account of coerced family planning practices, Congress created a limit per year of 10,000 individuals who would receive this grant. They had a cap. They lifted this cap in 2005 and made it unlimited. So during 1996 to 2005, many individuals were receiving grants of asylum as a result of children born. So is your argument basically Congress is no longer concerned from a policy standpoint of sort of manipulating the outcome of the proceedings by procreating children? I'm trying to choose my words delicately here. I respectfully disagree with the use of the term manipulation. I think that individuals who start a family, that is a choice made. I don't think individuals, I would hope that individuals are not having children simply to create a basis for it. How is that any different from engaging in a fraudulent marriage in order to obtain immigration benefits? Because the children exist. It's not fraudulent. Well, they exist because they're procreated during the pendency of the proceedings. You see the problem now, don't you? I do understand there is a policy concern. I think that the appropriate place would be for Congress. And I would... So you don't think Congress is particularly worried about it, so Judge Tallman, you don't need to be concerned either. Is that... Congress and the board have certainly considered that argument and addressed it specifically in finding that you can seek asylum based upon children born in the United States, as they specifically say in JWSSYG. And the last point I think is any policy concerns are certainly overridden by the stated policy of the United States not to return individuals to persecution or torture. And there would be, if you were to take Your Honor's argument in matter of Moghrabi, where individuals adopted new political beliefs while in the United States, and the board in matter of Moghrabi specifically says individuals who became politically active, in that case an Iranian national who became politically active in the United States was granted asylum in a precedential decision. So the persecution here would be that the children would not be listed in the household registration in China, and therefore would not be eligible for Chinese social benefits such as free public schooling and healthcare and so on. That is one element of the claim. And really the crux of the claim is a fear of sterilization. That is her fear, and certainly the parties disagree as to whether the evidence establishes that she will be sterilized, but she doesn't need to establish that she will be sterilized. She only needs to establish- But that gets back to the question that one of my colleagues asked earlier with regard to the State Department country condition reports, which suggest that in this particular province in China, there has not been any reported sterilizations for at least 10 years. That is what the country conditions report, the 2007 profile issued by the State Department, is they are quoting a family planning official in China who states that there has been no reports of forced sterilizations or abortions in Fujian province in 10 years. The very next sentence in the 2007 profile says that claim, essentially asking the persecutor whether or not he persecutes, that claim can't be verified. Because the credibility of a family planning official, where it's publicly denying the existence of a persecutory policy, is simply not something that we can base whether or not that's an accurate reflection of- Is Chen an only child? She does have siblings, Your Honor, Ms. Chen. She wouldn't qualify under the recent modification of the third plenum that the sterilization policy doesn't apply if the parent is an only child. Well, that recent potential modification of the policy actually officially has not been adopted is my understanding. But because she has other children, in fact, her mom was- No, not whether she has other children. Right, Ms. Chen has other siblings, I'm sorry. And her mom was sterilized in 1985 as a result of violating the family planning policy, which is also relevant to her claim and brings me to the second point, which is the board has rejected Ms. Chen's direct evidence of individuals being persecuted in her village because of the length of time between the persecutory acts and present day. And the fact remains is that in a matter of SYG, in a matter of JWS, the board specifically found, for example, no change in policy from 1999 until present, that there was no change in the government's practices. And the government, in this instance, DHS, Office of Immigration and Litigation, raises the fact that, well, in 2002, there was an adoption of the family planning rules, a complete overhaul, allegedly an overhaul of the laws governing the family planning practice. Is it your point that the government hasn't shown that the children would be treated differently even though they are registered as Chinese nationals because they do have American citizenship? The board, in fact, accepts that they will be viewed as Chinese nationals- That's not my question. I'm sorry. They may be viewed as Chinese nationals, but you can be viewed as a Chinese national and retain your American citizenship. Not under Chinese law. Chinese law does not recognize dual citizenship. Under Chinese law, if the Chinese government views them as Chinese nationals, under Chinese laws, they cannot be U.S. citizens. So there's no evidence that there would be different treatment to them because they were U.S. citizens? Precisely, Your Honor. Okay. Do the cases you cite from the Board of Immigration Appeals have provided roughly case-by-case guidance, I would conclude, based on individuals seeking asylum who have more than one child? Correct. To my knowledge, neither the Ninth Circuit nor any other court of appeals have ever published any decisions that establish proper standards for how the board should apply these cases. Don't you think that this would be a good case and have all the elements necessary to set forth some guidance for the Bureau so they can handle these decisions more uniformly in the future? Yes, Your Honor. I do think that this could be an appropriate case to do so. I think this Court recently started touching on that in Zhao Zhao v. Holder, 728 F. 3rd, 1144. It was issued just about a month ago addressing some of the standards, but I don't believe there has been a comprehensive decision from this Court. Okay. David, one last question. Yes, Your Honor. You started to say that she doesn't have to prove, Ms. Chen, does Zhang have to prove that she will be sterilized, the fear of sterilization is sufficient to allow asylum? No, Your Honor. What's required is a well-founded fear, and a well-founded fear could be as low as 10 percent chance of an event occurring. Cardozo-Fonseca was the INSB Cardozo-Fonseca from the Supreme Court. So requiring her to show with certainty that she will be sterilized is not a requirement. Just that... She has the burden of proof of showing that she has an objective fear of sterilization, which can be substantiated by statistics showing that 10 percent of the people in Fujian Province are indeed sterilized if they have more than one child. Yes, Your Honor. Counsel, your time has expired. Thank you very much. Yes. Thank you very much. Good morning, Your Honors. Aaron Petty on behalf of the Attorney General. The Court should deny the petition for review in this case because the record does not compel a reasonable fact finder to conclude that Ms. Chen established a well-founded fear of persecution on account of her two United States-born children. She had to show that she would be persecuted for allegedly violating the family planning policy, and under board precedent, which is entitled to deference, she had to demonstrate what the policy in her locality was, that her conduct would be viewed as a violation of that policy, and that her conduct would be punished by means amounting to persecution. Well, she has shown that her mother and her mother-in-law were forcibly sterilized. She's shown that they were sterilized, not that they were forcibly sterilized. And the difference is... Is there any evidence that they were voluntarily sterilized? Well, that's actually a key issue, Your Honor, because there can be sterilization that is succumbed to through peer pressure, through, my understanding... Peer pressure from the communist peers. From co-workers, Your Honor. My understanding is that there are penalties when there are out-of-plan births that occur among a company's employees, and the group is punished. So you don't think that a reasonable fact-finder could find that with the mother-in-law and mother sterilized, that that was more likely than not for sterilization? There's no evidence in the record to suggest that the sterilization was coerced through means amounting to persecution. Was there any evidence that it was voluntary? There's no evidence of that either, but the burden is on the alien to demonstrate that she's eligible for the relief sought. But I thought your argument was not that you were contesting that it was forced sterilization, but that the board determined that the lapse of time was so great between those events and what's happening now. With specific reference to those two pieces of evidence, yes, that's correct, Your Honor. There was an overhaul of the lapse of time, and there's been a change in the law since then that we know from the 2007 profile, there was an overhaul of the family planning policy in 2002. Just to touch on the question that Your Honor raised a moment ago. Policy question or a different one? The question about, yes, the policy question. I don't think that arises in this case. The children that are in the record were born in 2004 and 2005, and the notice to appear wasn't served until 2006. In any event, there might be a Chenery issue and an exhaustion issue, even if the children had been born later. Okay. I think that answers my concern. There's evidence in the record from which a reasonable fact finder could conclude that the policy at issue in Fujian Province does not require sterilization. We know from the 2007 profile and from the Fujian Province Provincial Birth Planning Committee that the typical punishment is a fine, and there's no claim here of economic persecution. We know that central government policy prohibits coercion, and that U.S. officials in China are unaware of any policy at either the national or the provincial level that mandates sterilization for couples who have a second child abroad. But they may subject themselves to fines and higher costs for education and other social benefits. What evidence is there that the Chinese authorities would treat these children differently because they were born in America where the BIA assumed that they would be registered nationals of China? Or do you agree with Mr. Bardavid that under Chinese law, whether they have American citizenship or not is irrelevant as far as the Chinese are concerned? I don't know whether citizenship would make a difference in whether they could register them. I believe if they are registered, then they would get the benefits, but they would also take the burdens for the parents in terms of the family policy. So we can just ignore the American citizenship as far as the Chinese authorities acting upon them? Yes, Your Honor. Thank you. Again, the Fujian Provincial Birth Planning Committee has reported no forced abortion since 1997 or 1998, and this is corroborated by U.S. consular officials who have found no recent cases of physical coercion discussing this matter with physicians in the local area. Chen's other evidence is insufficient to demonstrate that a reasonable fact finder would be compelled to conclude that the board was wrong, and this is a point that counsel clearly make. It's not 10 percent. It's whether a reasonable fact finder would be compelled to conclude that the 10 percent threshold was met. The only evidence that she has that's specific to her case are the two cases of sterilization that occurred nearly 30 years ago under a different policy, and her claim that a neighbor was forcibly sterilized in 2006 that's not supported by any documentary evidence at all. We know that there are rogue family planning officials and that forcible sterilizations do occur, but that alone is not enough to compel a finding that she demonstrated an objectively well-founded fear of persecution, given the other evidence in the record that mitigates her own evidence. Unless the Court has any questions. Anybody have any further questions? I think not. Thank you. Thank you, Your Honor. All right. Counsel, I'll give you a minute on rebuttal. Very briefly, just with respect to the lack of evidence that her mother's abortion occurred by force, she testified on page 99 and 100 of the record that her mother was specifically arrested and forcibly sterilized. The judge on page 52 of the record finds her testimony entirely credible, and therefore there's no reason to doubt this testimony. The same rings true for the 2006 forced abortion of her in-law. And therefore, to say that there's no evidence in the record disregards the fact that she was found credible and under the regulations. Credible testimony alone can be sufficient to carry a burden of proof. Unless the Court has any further questions, we'll rest on the briefs. I think not. Thank you very much. The case just argued is submitted. Next, thank you both for the argument. The next case on the
judges: Murphy, Tallman, Bea